IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| In the Matter of:<br><br>MAUI INDUSTRIAL LOAN & FINANCE CO.,<br><br>       Debtor,<br>_____<br><br>RNI-NV LIMITED PARTNERSHIP,<br><br>       Appellant,<br><br>    v.<br><br>DANE S. FIELD, Chapter 7 Trustee,<br><br>       Appellee. | CV NO. 17-00394 DKW-KSC<br><br>Bankr. Case No. 10-00235<br><br>**ORDER AFFIRMING BANKRUPTCY COURT ORDER** |

## INTRODUCTION

Appellant RNI-NV Limited Partnership ("RNI") appeals the bankruptcy court's July 31, 2017 "Final Judgment as to Trustee's Objection to RNI-NV Limited Partnership's Claim (POC#21)." RNI asks the Court to overturn the bankruptcy court's decision disallowing its claim against the estate of chapter 7 debtor Maui Industrial Loan and Finance Company, Inc. ("MFC"). In the proceedings below, the bankruptcy court sustained the Trustee's Objection to RNI's Claim, based in part, on the bankruptcy court's prior determination in a 2010 Adversary Proceeding between these parties that RNI does not have a valid restitution claim.

RNI argues that the bankruptcy court erred both procedurally and on the merits when it sustained the Trustee's Objection and proceeded by contested matter. Although the Court agrees that the bankruptcy court should have proceeded by adversary proceeding, rather than by contested matter, given that the Trustee's Objection included a request for subordination, such error was harmless under the particular circumstances presented because RNI suffered no prejudice. With respect to the substance of the claim, the bankruptcy court did not err when it precluded RNI from asserting a restitution claim, in view of its prior determination of that same issue in a 2010 Adversary Proceeding. Nor did the bankruptcy court err in disallowing RNI's Claim pursuant to 11 U.S.C. § 502(b)(1), notwithstanding RNI's repayment of its liability to the estate under Section 502(d). AFFIRMED.

## <u>BACKGROUND</u>

MFC was a nondepository financial services loan company that was authorized to make loans, but not authorized to accept deposits from the public under state law. Lloyd Kimura controlled MFC and caused it to "borrow" money from investors in exchange for promised returns, and to repay the loans and make the promised returns largely with funds borrowed from subsequent investors. In a federal plea agreement, Mr. Kimura admitted that he operated MFC as a Ponzi scheme for approximately twenty-three years. *See United States v. Kimura*, Case No. 10-CR-00890 (D. Haw.), Dkt. No. 8 (1/5/11 Mem. of Plea Agreement). After a

state regulator ordered MFC to cease doing business, MFC and Kimura commenced

separate bankruptcy cases in 2010.   *See* Mem. of Decision on Tr.'s Mot. for

Instructions, filed Sept. 7, 2017, attached as Ex. 3 to MFC Opening Br., Dkt. No. 6.[1]

## I.     **Bankruptcy Proceedings**

In 1999, RNI paid $1,000,000 for forty percent of the stock in MFC, but did

not obtain approval from the State Division of Financial Institutions before

completing the stock purchase.   In 2007, when RNI sought to withdraw its

investment in MFC, the parties entered into a stock repurchase agreement on

October 8, 2007, in which MFC promised to pay RNI a total of $2,500,000 in

installments.   MFC paid $1,040,000 on the repurchase agreement before defaulting.

RNI then sued MFC in state court and judgment was entered in RNI's favor on

November 4, 2009 (Civil No. 09-0037).

MFC filed for bankruptcy under Chapter 7 on January 28, 2010.   Two

bankruptcy proceedings are relevant to this appeal.   First, the Trustee successfully

brought an adversary proceeding against RNI seeking to recover the $1,040,000 that

MFC paid to it (Adv. Pro. No. 10-90069).   Second, on April 1, 2010, in the Chapter

7 proceedings below (Bankr. No. 10-00235), RNI filed Proof of Claim No. 21 (from

Claims Registry) for $1,938,186.97, which the bankruptcy court disallowed upon

---

[1]Unless otherwise indicated, all references to the record correspond to this Court's docket number entries for the instant appeal, Civil No. 17-00394.

the Trustee's Objection and which is the subject of the present appeal. *See* Dkt. No. 7-2 (4/1/2010 POC No. 21).

### A. **Adversary Proceeding (Adv. Pro. No. 10-90069)**

The Adversary Proceeding was an avoidance action brought by the Trustee to recover the amounts paid by MFC to RNI under the stock repurchase agreement. The complaint in the Adversary Proceeding alleged four counts: (1) violation of the Hawaii Business Corporations Act, HRS § 414-111(c) (Count I); (2) violation of the Hawaii Uniform Fraudulent Transfer Act, HRS Chapter 651C (Count II); (3) 11 U.S.C. § 548 (Count III); and (4) transferee liability pursuant to 11 U.S.C. § 550 (Count IV). The bankruptcy judge granted the Trustee's motion for summary judgment on Counts I, II, and IV in a May 16, 2011 Memorandum of Decision, and on June 1, 2011, the parties stipulated to dismiss Count III. On May 27, 2011, RNI filed a Notice of Appeal of the May 16, 2011 Decision. The district court dismissed the appeal for lack of jurisdiction, and the Ninth Circuit affirmed. *See Field v. RNI-NV (In re Maui Indus., Loan & Fin. Co., Inc.)*, 2011 WL 1870289 (Bankr. D. Haw. 2011), *appeal dismissed*, 2011 WL 6012039 (D. Haw.), *recon. denied*, 2012 WL 667759 (D. Haw.), *aff'd*, 583 Fed. Appx. 636 (9th Cir. July 14, 2014).

The bankruptcy court determined that the pre-petition transfers violated the Hawaii Business Corporations Act, in part, because at a time when it was insolvent, MFC made "distributions" to RNI, which under Hawaii law, are defined as "[a]

direct or indirect transfer of money or other property (except its own shares) or incurrence of indebtedness by a corporation to or for the benefit of its shareholders in respect of any of its shares." Mem. of Decision at 6, filed May 16, 2011, Dkt. No. 7-31 (quoting HRS § 414-3). The bankruptcy court explained that RNI's restitution claim was also not warranted because "granting RNI a restitution claim would unjustly give RNI greater rights than it bargained for. RNI's restitution claim, if granted, would put RNI on a par with [MFC]'s unsecured creditors, even though RNI agreed to buy stock, which is subordinate to creditor claims." *Id.* at 7. The bankruptcy court reasoned that "[a]llowing RNI to elevate its rights to equal status with unsecured creditors would be unfair to [MFC]'s other creditors." *Id.* (citing *Durette v. Aloha Plastic Recycling, Inc.*, 105 Hawaiʻi 490, 503, 100 P.3d 60, 73 (2004) (recognizing that restitution is equitable in nature, guided by the goal of preventing injustice)). The bankruptcy court further determined that "a party that has engaged in wrongful conduct in connection with the transaction is not entitled to restitution," citing RNI's failure "to obtain regulatory approval before acquiring shares of [MFC]." *Id.* at 7. The bankruptcy court concluded that the Trustee was entitled to avoid the stock repurchase agreement, the related promissory note, and the payments from MFC to RNI under HRS § 414-111(c). *Id*. at 8.

Additionally, because there was no dispute that RNI did not give reasonably equivalent value in exchange for the $1,040,000 in transfers received from MFC,

that the transfers occurred within a four-year reach-back period, or that RNI did not

prove that it took the transfers in good faith, the bankruptcy court found the transfers

were avoidable by the Trustee under the Hawaii Uniform Fraudulent Transfer Act,

HRS § 651-4C(a).   *Id.* at 9–10.   Finally, the bankruptcy court concluded that the

Trustee was entitled to recover from RNI the $1,040,000 in transfers under 11

U.S.C. § 550, and awarded the Trustee pre-judgment interest at ten percent per

annum from the date on which the transfers were made.   *Id.* at 11.

Following RNI's unsuccessful appeals to the district court and the Ninth

Circuit, the Trustee executed on RNI's appeal bond and, on September 11, 2014,

filed a Satisfaction of Judgment for the $1,428,324.90 that RNI paid back to the

estate in the avoidance action.   Dkt. No. 7-44 (9/11/2014 Satisfaction of Judgment

in Adv. Pro. No. 10-90069); Dkt. No. 7-6 (8/7/14 Notice of Receipt of Payment on

Judgment in Adv. Pro. No. 10-90069).

### B.      RNI's Claim And Trustee's Objection (Bankr. No. 10-00235)

In the MFC Chapter 7 case, RNI filed its Proof of Claim No. 21 ("Claim") in

the amount of $1,938,186.97 on April 1, 2010.   Dkt. No. 7-2.   On August 2, 2011,

while the contemporaneous Adversary Proceeding was pending, the Trustee

scheduled RNI's Claim at $0. Dkt. No. 7-4 at 6 (8/2/11 Mot. to Approve Procedure for Bifurcation of Unsecured Claims Filed by Ponzi Scheme Investors).[2]

On April 25, 2017, the Trustee filed a Motion for Instructions as to Distribution Rights of Creditors Filing Claims ("Motion for Instructions"), seeking clarification from the bankruptcy court on the procedure for disbursing approximately $8,000,000 in estate funds to creditors, of which $6,000,000 was designated for timely "Class A" restitution claims under 11 U.S.C. § 726(a)(2). Dkt. No. 7-7. The Motion for Instructions sought guidance as to how the Trustee was to distribute the balance of estate funds—whether to first pay untimely claims (Section 726(a)(3)) or "Class B" claims (lost investment/lost profit). *Id.* at 2–3. Exhibits A through C to the Trustee's Motion for Instructions proposed classification and distribution of the estate funds to three types of creditors based on their classes of recovery: "Class A" (timely restitution claims); "Class B" (timely lost profit claims); and untimely, as-yet unbifurcated claims. Because RNI's Claim for $1,938,186.97 was neither scheduled in Exhibits A though C nor addressed in the Motion for Instructions, RNI filed an Objection to the Trustee's Motion for Instructions on May 19, 2017, demanding that its Claim be classified "in Exhibit A [Class A claims], as a timely filed proof of claim," either "for $1,938,186.97 or

---

[2]As of August 2, 2011, RNI had not yet complied with the requirements of an "allowed claim" under 11 U.S.C. § 502(d). RNI had posted a bond pending its appeal of the Adversary Proceeding on June 17, 2011, but did not satisfy the judgment until September 11, 2014.

$1,728,831.00, the amount of the appeal bond paid over to the Trustee." Dkt. No.

7-8 at 2, 5. RNI argued that "[u]nder § 502(d), after RNI had posted an appeal bond

. . . *and* the Trustee filed his Satisfaction of Judgment on September 14, 2014, RNI's

proof of claim was reinstated and allowed to participate in the distribution of the

estate funds, unless the Trustee filed a formal objection." *Id.* at 8.

On June 1, 2017, the Trustee did object, filing an Objection to RNI's Claim on

the bankruptcy court's local form (hib_3007-1), asserting that the Claim should be

disallowed in its entirety. Dkt. No. 7-11 (Objection to Claim). The Trustee's

Objection argued that RNI's Claim was unenforceable against the estate by

operation of collateral estoppel or issue preclusion, in light of the issues already

adjudicated by the courts in the Adversary Proceeding. In the alternative, the

Trustee asserted that any "allowed claim" that RNI may have must be subordinated

to the lowest priority under Section 510(b), or alternatively, equitably subordinated

under Section 510(c), or alternatively, subordinated to a "Class B" claim. Dkt. No.

7-11 at 15.

RNI opposed the Trustee's Objection as both procedurally improper and

substantively without merit. RNI first asked the bankruptcy court to dismiss the

Trustee's Objection on procedural grounds because the Trustee combined its

Objection to the Claim with another demand for relief—subordination—which is

not permitted under Federal Rule of Bankruptcy Procedure 3007(b) and Local

Bankruptcy Rule 3007-1(d).   According to RNI, when an objection is accompanied by a subordination request, such relief must be sought in a separate adversary proceeding.   Dkt. No. 7-12.[3]

In reply, the Trustee emphasized that he only sought subordination of the Claim in the alternative and argued that RNI identified no prejudice that it would suffer should the bankruptcy court proceed by way of contested matter.   According to the Trustee, there were no remaining issues of factual or legal dispute regarding subordination, since all such issues had previously been determined in the Adversary Proceeding.   Dkt. No. 7-13 at 4–5.   The Trustee also maintained that RNI did not have a restitution claim because the bankruptcy court previously determined in the Adversary Proceeding that RNI was a shareholder, not an MFC investor, and that MFC made "distributions" to RNI.   Moreover, the Trustee asserted that RNI's Claim was not "restored" pursuant to Section 502(d); rather, its

---

[3]RNI declared in its opposition:

> RNI hereby raises an objection to the Trustee pursuing its objection and subordination of RNI's claim by way of a Rule 3007(a) and/or Rule 9014 "contested matter," when Rule 3007(b) and LBR 3007-1(d) clearly require that the Trustee proceed by way of an adversary complaint for both the objection to RNI's claim and any subordination of that claim.   In the Ninth Circuit, it is clear that a request to subordinate a claim must proceed pursuant to a Rule 7001(8) adversary complaint when the request is combined with an objection to a claim.

Dkt. No. 7-12 at 11.

Claim was merely "reinstated" when RNI paid the judgment against it and was then an "allowed claim," subject to the Trustee's Objection. *Id.* at 7-8.

## II. <u>Bankruptcy Court Order And Judgement</u>

The matter was fully briefed, and the bankruptcy court held a hearing on the Trustee's Objection on July 10, 2017. Dkt. No. 7-21 (7/10/17 Hrg. Tr.). On July 27, 2017, the bankruptcy court entered its Order Sustaining Objection to Claim, determining that RNI's Claim should be disallowed. Dkt. No. 7-15 (7/27/17 Order). With respect to the procedural issue, the bankruptcy court rejected RNI's request to dismiss the Trustee's Objection, and noted that:

> RNI argues that the proper procedure to subordinate under § 510(b) is to initiate an adversary proceeding. However, the judgment in the prior adversary proceeding determined all issues that are necessary to determine § 510(b) subordination, so it would be useless to initiate another proceeding because RNI would lose. However, equitable subordination under § 510(c) would bring in to play factors that were not involved in the prior adversary proceeding.

7/27/17 Order at 4 n.7. With respect to the merits of the Trustee's Objection, the bankruptcy court recounted the prior determination in the Adversary Proceeding in which the Trustee–

> brought an avoidance action against RNI to recover the roughly $1.4 million that the debtor paid to RNI pursuant to the judgment in the state court breach of contract action for the remaining debt owed under the stock repurchase agreement. I issued a judgment avoiding the transfer and ordering RNI to return the money to the bankruptcy estate. I found that the stock

repurchase agreement was illegal and that RNI had no restitution claim against the debtor.

7/27/17 Order at 2 (footnotes omitted).   The bankruptcy court then evaluated RNI's current Claim in light of the prior rulings in the Adversary Proceeding, and concluded that the issues previously adjudicated precluded re-litigation of RNI's Claim for restitution:

> The issue previously alleged in the avoidance litigation is identical to the issue raised in this claim objection—whether RNI has a restitution claim for its original $1,000,000.00 contribution to the debtor.   The debtor and RNI already presented arguments on this issue in the avoidance action and I made a final ruling that RNI did not have a restitution claim. RNI appealed to the U.S. District Court but the appeal was dismissed for lack of jurisdiction (RNI failed to timely file a notice of appeal) and the Ninth Circuit affirmed the dismissal. Thus, the issue was actually litigated and adjudicated.   Finally, the determination that RNI's purchase of the debtor's stock was illegal was critical to the avoidance action.   RNI argued, as a defense to the avoidance claim, that it had a restitution claim against the debtor, and that the satisfaction of that claim was value given in exchange for the payment.   In order to evaluate this defense, I had to decide whether RNI's restitution claim was valid.   Because all of the elements are established, issue preclusion applies and [Proof of Claim] 21 is disallowed.

7/27/17 Order at 2–3 (footnote omitted).

With respect to RNI's assertion that its Claim was restored pursuant to Section 502(d), the bankruptcy court explained, Section 502(d) "provides that, if a creditor received an avoidable transfer, the creditor's claim is disallowed unless the creditor returns the transferred property.   The implication of this section is that

returning the transferred property does not create a new claim; instead, it eliminates one reason for disallowing the creditor's original claim."   7/27/17 Order at 3. RNI's repayment of the $1.4 million to the bankruptcy estate did not give "it a valid claim under § 502(d). . . the fact remains that, as [the court] previously determined, RNI's claim is also invalid because the contract on which it was based was illegal." 7/27/17 Order at 3–4.

Because the bankruptcy court disallowed RNI's claim, it determined that the Trustee's alternative requests for subordination under Section 510(b) and for equitable subordination under Section 510(c) were irrelevant, and did not address them further.   Final Judgment was entered Sustaining the Trustee's Objection to RNI's Claim on July 31, 2017.   Dkt. No. 7-16.

This appeal and United States District Court election ensued.   Dkt. No. 1.

## STANDARD OF REVIEW

This court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.   *In re Kimura (United States v. Battley)*, 969 F.2d 806, 810 (9th Cir. 1992).   The court "must accept the Bankruptcy Court's findings of fact, unless the court is left with the definite and firm conviction that a mistake has been committed.   Mixed questions of law and fact are reviewed *de novo*."   *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010) (quotation marks and citations omitted).   The Court reviews "*de novo* a bankruptcy court's determination that

issue preclusion is available, and for an abuse of discretion the decision to apply

issue preclusion." *In re Chunchai Yu*, 694 F. App'x 542 (9th Cir. 2017) (citing

*Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006)).

## DISCUSSION

The Court resolves three issues necessary to the determination of this appeal,

and affirms the bankruptcy court as to each.[4]   First, although it was error to proceed

by contested matter instead of adversary proceeding on the Trustee's Objection to

RNI's Claim, such error was harmless where it did not affect the substantial rights of

the parties, is not inconsistent with substantial justice, and RNI suffered no

prejudice.   Second, the bankruptcy court neither erred nor abused its discretion by

---

[4]Although RNI lists thirteen issues in its Statement of Issues on Appeal, most of the issues it raises are duplicative or irrelevant.   In particular, several of the stated "issues on appeal" attack final determinations made by the bankruptcy court in the 2010 Adversary Proceeding—and not during the applicable Claims determination process—and which are not properly the subject of this appeal.   *See* Dkt. No. 4-2 (8/28/17 RNI Designation of Record on Appeal and Statement of Issues on Appeal).   One example, which does not touch on the bankruptcy court's 7/27/17 Order at all, but relates entirely to the bankruptcy court's prior ruling on Count I of the Trustee's Motion for Summary Judgment in the Adversary Proceeding, states:

> Whether the Bankruptcy Court erred in holding that Appellant-RNI violated § 412:9-500 & § 412:3-612, Haw. Rev. Stat., when Appellant-RNI could not, as a matter of law, purchase an "equity interest" in Debtor nor could Appellant-RNI receive an "unlawful" dividend nor a dividend of any type from the Debtor because (i) the Debtor had operated as a Ponzi scheme since 1986, 13 years before Appellant-RNI purportedly purchased an "equity interest" in the Debtor in 1999, and (ii) thus Appellant-RNI could neither have "purchased" nor "redeemed" the "equity interest" in the Debtor after 1986, when the Debtor began operating as a Ponzi scheme.

Dkt. No. 4-2 at 10 ¶ 8.   RNI previously had the opportunity to challenge the bankruptcy court's May 2011 rulings in the Adversary Proceeding.   Seven years later, it may not seek to re-litigate those matters now in this appeal.

precluding RNI from asserting its Claim as a valid restitution claim.   Finally, the

bankruptcy court did not err in disallowing RNI's Claim pursuant to Section

502(b)(1), notwithstanding RNI's repayment of its liability under Section 502(d).

**I.**     **The Bankruptcy Court's Decision To Proceed By Contested Matter Was
Harmless Error, And RNI Suffered No Prejudice**

The Court first addresses RNI's assertion that the bankruptcy court was

required to dismiss the Trustee's Objection to RNI's Claim pursuant to Federal

Rules of Bankruptcy Procedure 3007(b) and 7001(8) and Local Bankruptcy Rule

3007-1(d).   Although the Trustee's Objection included alternative requests for

subordination, which ordinarily require the filing of an adversary complaint under

Bankruptcy Rule 7001(8), it was harmless error not to proceed in that manner under

the specific circumstances of this case.   That is because the material facts were few

and undisputed, the critical issues were pure questions of law, and RNI identified no

prejudice it would suffer by forgoing the successive adversary proceeding it now

demands.   Further explanation is set forth below.

**A.**     **The Bankruptcy Court's Decision To Proceed By Contested
Matter Is Subject To Harmless Error Analysis**

It is undisputed that the Trustee filed an Objection to RNI's Claim, and that

Federal Rule of Bankruptcy Procedure 3007 governs such objections.   Nor is it

disputed that the Trustee's objection also included an alternative subordination

request.   In such circumstances, Bankruptcy Rule 3007(b) commands that the court

proceed by adversary proceeding. Fed. R. Bank. P. 3007(b) ("[a] party in interest

shall not include a demand for relief of a kind specified in Rule 7001[5] in an

objection to the allowance of a claim, but may include the objection in an adversary

proceeding."); *see also* Local Bankr. R. 3007-1(d) ("An objection to claim that

includes a demand for relief of a kind specified in Bankruptcy Rule 7001 shall be

converted to an adversary proceeding.").

The Bankruptcy Appellate Panel of the Ninth Circuit and other reviewing

courts have examined similar procedural challenges under the Bankruptcy Rules and

determined that the failure to require a separate adversary proceeding is subject to

harmless error analysis. *See, e.g., Korneff v. Downey Reg'l Med. Ctr. Hosp., Inc.*

*(In re Downey Reg'l Med. Ctr. Hosp., Inc.)*, 441 B.R. 120, 127 (B.A.P. 9th Cir.

2010) ("The bankruptcy court's decision not to require an adversary proceeding is

subject to a harmless error analysis."); *Ruvacalba v. Munoz (In re Munoz)*, 287 B.R.

546, 551 (B.A.P. 9th Cir. 2002) ("Such an error may nevertheless be harmless when

the record of the procedurally incorrect 'contested matter' is developed to a

sufficient degree that the record of an adversary proceeding likely would not have

been materially different. In such circumstances, the error does not affect the

substantial rights of the parties and is not inconsistent with substantial justice."); *In*

_____

[5]The Trustee does not dispute that Bankruptcy Rule 7001, which provides a list of all items to be
brought as adversary proceedings, expressly includes "a proceeding to subordinate any allowed
claim or interest[.]" Fed. R. Bankr. P. 7001(8).

*re Decker*, 199 B.R. 684, 689 (B.A.P. 9th Cir. 1996) ("Ninth Circuit case law indicates that failure to provide an adversary proceeding is subject to a harmless error analysis."); *In re Gentile Family Indus.*, 2014 WL 4091001, at *6 (B.A.P. 9th Cir. Aug. 19, 2014) ("Even if the bankruptcy court possibly erred in not requiring an adversary proceeding to determine the Cooper Lease's term, we conclude that such error was harmless."); *In re Strata Title, L.L.C.*, 2014 WL 661174, at *8 (B.A.P. 9th Cir. Feb. 21, 2014) ("In reviewing the bankruptcy court's decision to allow the contest between Debtor and Pure Country to be litigated in a contested matter rather than in an adversary proceeding, we apply a harmless error analysis."); *see also In re Cannonsburg Envtl. Assocs.*, Ltd., 72 F.3d 1260, 1264 (6th Cir. 1996) ("Although we believe that an adversary proceeding should have been filed instead of a motion in a contested matter, this error constitutes harmless error.") (citing Fed. R. Bankr. P. 9005 (harmless error rule incorporating Fed. R. Civ. P. 61)).

The Court examines the following factors, among others, to determine whether the failure to require the Trustee to file a separate adversary complaint constitutes harmless error:

> whether the "material facts are few and undisputed," whether the "critical questions are pure questions of law," and whether the "factual record [or] the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding."

*In re Lakhany*, 538 B.R. 555, 561–62 (B.A.P. 9th Cir. 2015) (quoting *In re Munoz*, 287 B.R. at 551).

Some courts have reframed these factors to evaluate whether the appellant was prejudiced by the bankruptcy court's procedural determinations:

> The [Bankruptcy Appellate] Panel has developed a list of factors that we consider in determining whether prejudice has resulted from a bankruptcy court's decision to proceed by contested matter rather than adversary proceeding: (1) the material facts were few and undisputed, (2) the dispositive issues were pure questions of law, (3) neither party expressed any discontent with the contested matter procedures the bankruptcy court utilized, and (4) this Panel was "satisfied that neither the factual record nor the quality of the presentation of the arguments would have been materially different had there been an adversary proceeding." *Ruvacalba v. Munoz (In re Munoz)*, 287 B .R. 546, 551 (9th Cir. BAP 2002).

*In re Strata Title, L.L.C.*, 2014 WL 661174, at *9 (B.A.P. 9th Cir. Feb. 21, 2014).

As detailed below, under this rubric, RNI has not demonstrated that it was prejudiced, and, to the extent the bankruptcy court erred in not requiring that the Trustee seek alternative relief via an adversary proceeding, that error was harmless.[6]

---

[6]Even in *In re Copper King Inn, Inc.*, 918 F.2d 1404, 1406–07 (9th Cir. 1990), cited by RNI for the proposition that a subordination defense must proceed via adversary proceeding, the Ninth Circuit found that a trustee's failure to file an adversarial proceeding was *not* fatal because "for all practical purposes an adversarial proceeding was held in this case," and because the claimant "ha[d] not shown its position was materially prejudiced by the course of events."

**B.    RNI Suffered No Prejudice, And The Bankruptcy Court's Decision To Proceed Without A Separate Adversary Proceeding Was Harmless Error**

Under the harmless error standard, the Court concludes that the failure to require the Trustee to commence a separate adversary proceeding did not substantially affect the rights of the parties and is not inconsistent with substantial justice.   *See In re Munoz*, 287 B.R. at 551 (internal citations omitted); Fed. R. Bankr. P. 9005.   The procedural error is harmless in light of: the bankruptcy court record, which was developed to a sufficient degree that the record of an adversary proceeding likely would not have been materially different; the issues of law raised by the Trustee's Objection, rather than disputed issues of fact; the procedures utilized, which were the practical equivalent of an adversary proceeding and satisfied the basic tenets of due process; and the lack of prejudice to RNI.

First, the Court observes that the record before the bankruptcy court when it determined the Trustee's Objection was complete.   The alternative requests for subordination under Section 510(b) and equitable subordination under Section 510(c) were clearly presented to the bankruptcy court in the Trustee's Objection, and RNI does not offer any evidence or argument that the separate filing of an adversary complaint would have resulted in a more fully developed record with respect to the alternative requests for subordination.   In any event, the arguments and evidence that RNI presented to the bankruptcy court with respect to Sections 510(b) and

510(c), as it turned out, were irrelevant to the central issue of the Trustee's Objection to RNI's claim. In short, the record in the bankruptcy court was developed to a sufficient degree that "any arguably enhanced record generated in an adversary proceeding likely would not have been material." *In re Strata Title, L.L.C.*, 2014 WL 661174, at *10.

Second, as RNI acknowledges, the bankruptcy court was asked to decide questions of law, rather than resolve questions of disputed fact in the matters below. *See* RNI Opening Br. at 6, Dkt. No. 6. The "harmless error standard is especially apt where the bankruptcy motion in question was the procedural equivalent of a motion for summary judgment, with the issues to be decided by the bankruptcy court dealing with questions of law, not disputed fact." *In re Strata Title, L.L.C.*, 2014 WL 661174, at *8 (citing *City Equities Anaheim, Ltd. v. Lincoln Plaza Dev. Co. (In re City Equities Anaheim, Ltd.)*, 22 F.3d 954, 958–59 (9th Cir. 1994)). In the briefing below, the Trustee urged the bankruptcy court (1) to disallow RNI's claim based upon prior Adversary Proceeding rulings and, alternatively, (2) to subordinate RNI's Claim under Section 510(b) because RNI was a shareholder of MFC, and (3) to equitably subordinate RNI's Claim under Section 510(c) because the court previously determined that MFC's distributions to RNI violated state law. *See* Dkt. No. 7-11 (Tr.'s Obj.). These were issues of law that did not require consideration of disputed facts, did not call for the court to weigh evidence, and did not require the

court to assess credibility. Moreover, no new evidence was raised at the July 10, 2017 hearing on the Trustee's Objection. In other words, the material *facts* relied upon by the bankruptcy court were undisputed at the time of the July 10, 2017 hearing—the parties contested only the law applicable to those undisputed facts and the ultimate outcome.

Third, the contested matter conducted below was the functional equivalent of an adversary proceeding, offering and providing all parties notice, briefing and an opportunity to be heard. At the July 10, 2017 hearing on the Trustee's Objection, the bankruptcy court considered the parties' arguments—including those raised by RNI for the first time at the hearing—and even discussed the possible effect of the Trustee dropping the alternative subordination request and proceeding only with the Objection. Dkt. No. 7-21 at 8–13 (7/10/2017 Hrg. Tr.). The Court is satisfied that "the quality of the presentation of the arguments would [not] have been materially different had there been an adversary proceeding. Instead, it appears that [RNI] had adequate notice of the issues raised in the [Trustee's Objection], [a] hearing[] w[as] conducted, . . . briefing was submitted, [and] the parties had ample time to air their positions[.]" *In re Strata Title, L.L.C.,* 2014 WL 661174, at *10; *see also In re Starky*, 522 B.R. 220, 229 (B.A.P. 9th Cir. 2014) (proceeding by contested matter was harmless error where "Debtors never argued to the bankruptcy court that they were not properly served with the Trustee's papers or did not receive notice of

scheduled proceedings"); *In re Gentile Family Indus.*, 2014 WL 4091001, at *6

("The hearing was held as scheduled; the parties had ample time to air their

positions.   After considering the parties' evidence and arguments, the bankruptcy

court determined, as a matter of law, that the Cooper Lease term had been extended

another five years.   On this record, we have difficulty understanding how Diatom

was procedurally disadvantaged by the bankruptcy court's approach.").   Here, as in

*Strata Title*, "for all practical purposes, an adversary proceeding was held," and RNI

was not denied due process.   *In re Strata Title, L.L.C.,* 2014 WL 661174, at *10–11

("The due process requirements Debtor invokes are satisfied in both adversary

proceedings under Rule 7001 and contested matters under Rule 9014.").

Finally, both before the bankruptcy court and again in this appeal, RNI

identified no prejudice to itself caused by the bankruptcy court's decision to proceed

by contested matter.   *See, e.g.,* RNI Mem. in Opp'n to Tr.'s Obj., filed 6/26/17, Dkt.

No. 7-12; *see also In re Strata Title, L.L.C.,* 2014 WL 661174, at *8 ("Debtor has not

provided any specific examples of how the contested proceedings employed in this

case caused it any significant prejudice.") (citing *In re Downey Reg'l Med. Ctr.

Hosp., Inc.*, 441 B.R. at 128 (requiring the party claiming prejudice to identify

discoverable facts or witnesses that would "have changed the outcome of the

case.")).   Put another way, RNI failed to demonstrate how any "procedural

difference between contested matters and adversary proceedings prejudiced [it] in

any meaningful way." *In re Downey Reg'l Med. Ctr. Hosp., Inc.*, 441 B.R. at 127.

Based upon the factors discussed above, RNI not only did not suffer any evident

prejudice, but does not even offer any allegation to the contrary. "It is difficult to

understand how [RNI] was disadvantaged by the bankruptcy court's approach," *In

re Strata Title, L.L.C.,* 2014 WL 661174, at *8, particularly where RNI itself does

not attempt to identify any such disadvantage. In short, "[a]bsent a credible

argument or specific examples from [RNI] showing it suffered some procedural

disadvantage as a result of the procedures used in the bankruptcy court, that the court

allowed the action to proceed as a contested motion rather than adversary

proceeding is not a sufficient reason to disturb the [bankruptcy court's Order]." *In

re Strata Title, L.L.C.*, 2014 WL 661174, at *10.

## II. The Bankruptcy Court Properly Sustained The Trustee's Objection To RNI's Restitution Claim Based Upon Principles Of Issue Preclusion

RNI argues that the bankruptcy court wrongly disallowed its Claim under the

doctrine of collateral estoppel. The Court disagrees.

> "Collateral estoppel, or issue preclusion, bars the relitigation of
> issues actually adjudicated in previous litigation between the
> same parties." *Clark v. Bear Stearns & Co., Inc*., 966 F.2d
> 1318, 1320 (9th Cir. 1992). For the doctrine to apply: (1) the
> issue must be identical to one alleged in prior litigation; (2) the
> issue must have been "actually litigated" in the prior litigation;
> and (3) the determination of the issue in the prior litigation must
> have been "critical and necessary" to the judgment. *Id*.

*Beauchamp v. Anaheim Union High Sch. Dist*., 816 F.3d 1216, 1225 (9th Cir. 2016).

First, as accurately recounted by the bankruptcy court, the parties to this action are identical to those in the 2010 Adversary Proceeding in which the Trustee brought an avoidance action on behalf of the estate against RNI seeking to recover the $1,040,000 that MFC paid to it. The issue is also identical—despite RNI's attempt to obfuscate.[7] In giving the issue preclusive effect, the bankruptcy court held that the facts and law that it relied upon in establishing that RNI did not have a valid restitution claim for avoidance purposes also established that RNI did not have a valid restitution claim for purposes of whether to disallow RNI's claim under Section 502(a)–(e). 7/27/17 Order at 2–3.

RNI's arguments to the contrary are misplaced. For example, RNI notes that the bankruptcy court "relied on its earlier decision in the fraudulent transfer [Adversary Proceeding] under [HRS] § 651C-4, to conclude that under § 502(b)(1) RNI could not have a restitution claim as per § 651C-8 [avoidance defense based upon showing of both good faith and equivalent value]." RNI Reply at 6, Dkt. No. 10. RNI, however, maintains that it is not presently "attempting to argue that the § 651C-8 restitution defense affects Trustee's avoidance recovery, but RNI contends that [the] § 651C-8 restitution decision cannot be applied to disallow RNI's timely filed proof of claim under both § 502(b) and § 502(d) since *the elements of both laws*

---

[7]RNI, for instance, argues that its own 2009 state court judgment against MFC should have preclusive effect, rather that the bankruptcy court's final decision in the Adversary Proceeding. It is difficult to see how that could be so, given the Trustee's absence from the state court proceeding.

*are different*, as are the underlying policies." RNI Reply at 6, Dkt. No. 10

(emphasis added). RNI's argument misses the mark. Whether the elements of a

fraudulent transfer claim or defense are identical to the elements applicable to

determining whether a claim is "allowed" or "disallowed" under the Bankruptcy

Code is not dispositive of whether *issue preclusion* applies.[8] Throughout its

briefing, RNI insists that it is "simply trying to enforce its restitution claim that the

Bankruptcy Court wrongly denied." RNI Opening Br. at 19, Dkt. No. 6; *see also id.*

at 22–24. For purposes of this appeal, whether RNI had a valid restitution claim

was an issue previously litigated and determined in the Adversary Proceeding. RNI

---

[8]RNI appears to confuse the requirements of issue preclusion with those of "claim preclusion" or *res judicata*. *See, e.g., Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2331 (2016) (Alito, J., dissenting) ("Litigation of a 'cause of action' or 'claim' is barred if (1) the same (or a closely related) party (2) brought a prior suit asserting the same cause of action or claim, (3) the prior case was adjudicated by a court of competent jurisdiction and (4) was decided on the merits, (5) a final judgment was entered, and (6) there is no ground, such as fraud, to invalidate the prior judgment."). "[C]laim preclusion prevents a party from relitigating not only issues which were actually litigated in a prior action, but also all grounds of claim and defense which might have been properly litigated in the prior action." *Hanson v. Palehua Cmty. Ass'n*, 2013 WL 1751504, at *7 (D. Haw. Apr. 23, 2013), *aff'd*, 599 F. App'x 299 (9th Cir. 2015) (citations omitted). "[I]ssue preclusion similarly prevents a subsequent suit between the parties or their privies on a different cause of action and prevents the parties or their privies from relitigating any issue that was actually litigated and finally decided in the earlier action." *Id.* (citation omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) ("Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim."). The bankruptcy court did not rely upon *claim* preclusion when considering the preclusive effect of the judgment in the Adversary Proceeding on the issues raised by the Trustee's Objection to RNI's Claim.

may not relitigate that same "issue" by recasting it as a different "claim" or cause of action.

Second, the parties during the Adversary Proceeding presented arguments on the issue, and the bankruptcy court issued a final ruling which was appealed by RNI and dismissed by the district court and the Ninth Circuit. *See Field v. RNI-NV*, 2011 WL 1870289 (Bankr. D. Haw. 2011), *appeal dismissed*, 2011WL 6012039 (D. Haw.), *recon. denied*, 2012 WL 667759 (D. Haw.), *aff'd*, 583 Fed. Appx. 636 (9th Cir. July 14, 2014). For a claim to be "actually litigated" means that there was "a full and fair opportunity to litigate the merits of an issue." *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003). RNI has had a full opportunity to litigate the restitution issue in the Adversary Proceeding—including the chance to raise its argument regarding the preclusive effect of the 2009 state court action between RNI and MFC. Accordingly, the issue was actually litigated and adjudicated.

Finally, the question of whether RNI had a valid restitution claim was critical and necessary to the judgment where the bankruptcy court avoided the transfers and determined that because RNI did not have a restitution claim, the Trustee was entitled to summary judgment.[9] As to Count I for violation of the Hawaii Business

_____

[9]According to the bankruptcy judge,

> the determination that RNI's purchase of the debtor's stock was illegal was critical
> to the avoidance action. RNI argued, as a defense to the avoidance claim, that it

Corporations Act, HRS § 414-111(c), the bankruptcy court found that MFC's issuance of the promissory note to RNI and payments on the note were "distributions" and that MFC was insolvent when the transfers were made. As a result, the transfers were avoided, and RNI was not entitled to restitution for the original $1,000,000 contribution to MFC. Mem. of Decision at 4–8, filed May 16, 2011, Dkt. No. 7-31. With respect to Count II, the bankruptcy court determined that the Trustee could avoid the transfers to MFC under the Hawaii Uniform Fraudulent Transfer Act, HRS § 651C-4(a), because RNI did not take the transfers in good faith and for reasonably equivalent value. Although RNI argued that its restitution claim arising out of the void stock repurchase agreement was equivalent value for the purpose of its good faith defense, the bankruptcy court rejected this assertion because "RNI does not have a valid restitution claim." Mem. of Decision at 6, filed May 16, 2011, Dkt. No. 7-31. That is, because the bankruptcy court determined that RNI did not have a valid restitution claim, it granted summary judgment to the Trustee on Counts I and II and avoided the $1,040,000 transfer from MFC to RNI.

---

had a restitution claim against the debtor, and that the satisfaction of that claim was value given in exchange for the payment. In order to evaluate this defense, I had to decide whether RNI's restitution claim was valid.

7/27/2017 Order at 3.

The bankruptcy court found in the 2010 Adversary Proceeding that RNI did not have a restitution claim, and that determination was not disturbed on appeal. RNI is collaterally estopped from re-litigating this issue, and the bankruptcy court did not err in disallowing the claim.

## III. The Bankruptcy Court Properly Sustained The Trustee's Objection To RNI's "Restoration" Claim Under Section 502(d)

RNI also argues that the bankruptcy court erred in denying its Claim in light of the fact that it repaid the judgment against it in the Adversary Proceeding. The Trustee does not dispute RNI's argument that its Claim was "reinstated" by repayment of the voided transfers. However, the Trustee disagrees that the Claim was somehow "restored" pursuant to Section 502(d).

Under RNI's reading of the relevant provisions, because its Claim is no longer "disallowed" pursuant to 11 U.S.C. § 502(d), it is thereby entitled to a distribution from the estate on its Claim. It is RNI's theory that the "Trustee's receipt for RNI's payment of the judgment, satisfied the requirements of § 502(d), enabling RNI to participate in any distribution from the Estate." RNI Opening Br. at 11 (citations omitted), Dkt. No. 6. Indeed, RNI asserts that "[e]ven though the court avoided MFC's transfer to RNI, because RNI repaid the full amount of the avoided transfers with pre- and postjudgment interest, now the Bankruptcy Court *must allow* RNI's Class A claim in the amount of $1,000,000.00, or $1,428,324.90, or in an amount to be determined by the Court." *Id*. (Emphasis added). RNI is incorrect.

Section 502(d) provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

Under this provision, until RNI "paid the amount" for which it was liable under Section 550, its Claim was "disallowed." Once RNI repaid the estate (upon termination of its appeal of the Adversary Proceeding in 2014), its Claim was no longer "disallowed" by operation of Section 502(d). Nothing in Section 502(d), however, mandates that once an entity pays the "amount recoverable," such entity is thereby *entitled* to distributions from the estate. To be clear, under the plain language of the statute, Section 502(d) simply provides that until a creditor pays what it owes to an estate, any claim it may have is disallowed. That is all. No portion of this provision, nor any other in the Bankruptcy Code, states that once an entity pays what it owes the estate, such entity is unconditionally entitled to participate in distributions from the estate.

To the contrary, RNI is not entitled to payment on its Claim based solely upon operation of Section 502(d) because the bankruptcy court sustained the Trustee's Objection based, in part, upon the prior binding determination in the 2010 Adversary Proceeding that RNI does not have a valid restitution claim. The Trustee does not

dispute that RNI accounted to the estate for its liability, and, therefore, RNI's Claim is no longer *disallowed*. Notwithstanding repayment of its liability pursuant to Section 502(d), RNI's Claim remains subject to the remaining provisions of Section 502. Section 502(h) provides that Sections 502(a) and (b) apply to RNI's reinstated claim.[10] Under Section 502(a), "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, *unless* a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, *objects*." (Emphasis added). In this instance, the Trustee filed an objection, which the bankruptcy court considered, and sustained pursuant to Section 502(b)(1), which provides:

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
> > (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

_____

[10]Section 502(h) states:

> A claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition.

Because the bankruptcy court determined that RNI's Claim was unenforceable under Section 502(b)(1), it disallowed the Claim. This was not error, despite the fact that RNI had satisfied its liability under Section 502(d).

## <u>CONCLUSION</u>

For the foregoing reasons,[11] the bankruptcy court did not err when it sustained the Trustee's Objection and disallowed RNI's Claim. Accordingly, the Court affirms the bankruptcy court's July 27, 2017 Order and Final Judgment entered on July 31, 2017. The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: January 30, 2018 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*In re Maui Indus. Loan & Fin. Co.*, CV 17-00394; **ORDER AFFIRMING BANKRUPTCY COURT ORDER**

---

[11]Because the Court affirms the bankruptcy court's decision to sustain the Trustee's Objection to RNI's Claim on these grounds, it does not reach the remaining issues raised in the parties' briefing relating to subordination or classification of the Claim.